UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES CUNNINGHAM,<br><br>                      Plaintiff,<br><br>     v.<br><br>KING COUNTY, et al.,<br><br>                      Defendants. | CASE NO. C14-0798-TSZ-MAT<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Plaintiff proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 action. He alleges failure to provide proper medical treatment in violation of the Eighth Amendment. (Dkt. 7.) Defendants King County and Ben Sanders, M.D., have moved for summary judgment and provided plaintiff with the necessary warnings pursuant to *Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998). (Dkts. 17 & 18.) Plaintiff did not file a response. Having considered the record and the governing law, the Court recommends that defendants' motion for summary judgment be granted and this matter be dismissed with prejudice.

## BACKGROUND

Plaintiff was incarcerated in the King County Department of Adult and Juvenile

REPORT AND RECOMMENDATION
PAGE - 1

Detention ("DAJD") from May 13, 2013 to July 5, 2014. (Dkt. 19 at ¶ 4.)[1] He was initially held at the King County Correctional Facility ("KCCF") in Seattle, Washington, and then transferred to the Regional Justice Center ("RJC") in Kent, Washington, on February 8, 2014. (*Id.* at ¶¶ 2, 4.)

On February 19, 2014, plaintiff submitted a medical kite to RJC officials because his left eye lid was not opening properly.[2] (Dkt. 19-1 at 2.) On February 21, 2014, he was seen by a nurse. (Dkt. 19-2 at 6.) Plaintiff reported that his eyelid had been drooping for about six months, but he denied any associated trauma or event to the eye. (Dkt. 19 at ¶ 9.) He indicated that he had no pain but complained that he had some vision impairment peripherally at a distance. (*Id.*) The nurse observed that his left eyelid was about 40% closed and that he could not raise it voluntarily. (*Id.*) She assessed that he has ptosis (drooping eyelid) of unspecified origin and set up an appointment for him at the RJC medical clinic. (*Id.*)

On February 28, 2014, plaintiff was seen by Nurse Practitioner Glen Lirman. (*Id.* at ¶ 10.) Nurse Lirman determined that plaintiff had ptosis with exophthalmos (eye bulging) but noted that he had no significant associated symptoms. (*Id.*) Nurse Lirman noted that plaintiff claimed slight blurring to his vision; however, the results of testing using the Snellen eye chart were essentially normal. (*Id.*) Nurse Lirman ordered lab tests to rule out thyroid issues, and all test results were normal. (*Id.*) Nurse Lirman requested an appointment for plaintiff with an ophthalmologist at Harborview Medical Center ("Harborview") but indicated that there was no hurry on the appointment. (*Id.*) Nurse Lirman directed plaintiff to alert medical staff if he had

---

[1] The declaration of Dr. Sanders (Dkt. 19) is consistent with the attached medical records. Thus for ease of reference, the Court cites predominately to Dr. Sanders's declaration.

[2] Plaintiff did not submit any medical kites to jail staff while incarcerated at the KCCF. (*See* Dkt. 19 at ¶ 5 & Dkt. 19-1.)

REPORT AND RECOMMENDATION
PAGE - 2

further problems with his eye or increased symptoms, especially visual changes. (*Id.*) Plaintiff did not report any change to his vision or other symptoms to the jail medical staff during the rest of his incarceration. (*Id.*)

On February 28, 2014, RJC medical staff sent a fax to Harborview requesting an ophthalmology appointment for plaintiff. (*Id.* at ¶ 11.) On March 3, 2014, plaintiff was scheduled for an appointment on May 9, 2014. (*Id.*)

Plaintiff attended appointments at Harborview on May 9, 2014, May 23, 2014, and June 13, 2014, and he had a CT of his eyes on June 10, 2014. (*Id.* at ¶ 13.) A Harborview radiologist found bilateral nerve sheath enlargement but no intracranial hypertension or other symptoms that might indicate a more serious condition, like glaucoma. (*Id.*) As of June 13, 2014, the Harborview doctors found that plaintiff had 20/20 vision in both eyes and normal intraocular pressure. (*Id.*) The doctors prescribed no medication or treatment. (*Id.*) They scheduled a follow-up appointment for July 19, 2014, but the appointment was cancelled when plaintiff was released from incarceration on July 5, 2014. (*Id.*)

Plaintiff initiated the instant action on May 29, 2014. (Dkt. 1.) He alleges that he first notified KCCF staff of his drooping left eyelid and blurry vision in July 2013 but did not receive medical care until he was transferred to the RJC in February 2014. (Dkt. 7 at 3.) He further alleges that the first nurse he saw did not take the matter seriously because he was not seen by Nurse Lirman for ten days and that during this time, his vision worsened and the muscle in his eyelid weakened. (*Id.*) He complains that by the time he was seen at Harborview, his condition had deteriorated further and that the deterioration could have been prevented by more timely medical care. (*Id.*) He seeks compensatory and punitive damages. (*Id.* at 4.)

/ / /

REPORT AND RECOMMENDATION
PAGE - 3

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S.

at 585.  "[T]he requirement is that there be no *genuine* issue of material fact. . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[ ]" to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

## DISCUSSION

To establish an Eighth Amendment violation related to medical care, an inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010).  Prison officials may be deemed to have been deliberately indifferent to an inmate's serious medical needs "when they deny, delay, or intentionally interfere with medical treatment."  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoted sources and internal quotation marks omitted).  However, a prison official may be held liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

The indifference to medical needs must be substantial; a constitutional violation is not

REPORT AND RECOMMENDATION
PAGE - 5

established by negligence or "an inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988). Nor does a difference of opinion between an inmate and medical authorities regarding proper medical treatment give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Also, a mere delay of treatment, standing alone, does not suffice to state a claim of deliberate indifference; the inmate must show the delay led to further injury. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle*, 429 U.S. at 106); *see also Hallett*, 296 F.3d at 7450-6; *McGuckin*, 974 F.2d at 1059-60.

Viewing the evidence in the light most favorable to plaintiff, the Court concludes that, as a matter of law, defendants were not deliberately indifferent to a serious medical need. Despite plaintiff's allegation that he first reported the problems with his left eye to prison officials in July 2013, the evidence before the Court is that he did not submit a medical kite until February 19, 2014, and was seen by a nurse two days later. (Dkt. 19 at ¶¶ 5, 9; Dkt. 19-1.) *See Hernandez*, 343 F.3d at 1112 (allegations in complaint are insufficient to defeat summary judgment). The one-week delay between his initial visit with a nurse and his appointment with Nurse Lirman does not establish deliberate indifference because there is no evidence that plaintiff's condition deteriorated during that time. *See, e.g.*, *Shapley*, 766 F.2d at 407 (to establish deliberate indifference, delay must result in further injury). Nurse Lirman found no pain or other significant symptoms associated with plaintiff's condition, and his vision was essentially normal. (Dkt. 19 at ¶ 10.) Similarly, there was no deliberate indifference in the two-month delay before plaintiff was seen at Harborview. Although plaintiff alleges that his condition worsened during the delay (Dkt. 7 at 3), he did not make such complaints to RJC medical staff despite Nurse Lirman's instruction to report any increased symptoms to medical staff (*see* Dkt. 19 at ¶ 10). In

addition, his treatment at Harborview fails to corroborate his allegations. Like Nurse Nirman, doctors at Harborview found 20/20 vision. (*Id.* at ¶ 13.) They also did not prescribe any medication or treatment for his condition. (*Id.*)

In sum, defendants have presented evidence that plaintiff received timely and appropriate medical care after he reported his eye condition via kite to RJC medical staff. Plaintiff did not rebut this evidence or otherwise create a genuine issue of material fact for trial. Accordingly, plaintiff fails to establish deliberate indifference to a serious medical need and his Eighth Amendment claim should be dismissed on summary judgment.[3]

## CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motion for summary judgment (Dkt. 18) be GRANTED, and this matter be DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within

///

///

///

---

[3] Because the Court finds plaintiff's claims subject to dismissal for the reasons stated above, it declines to address defendants' additional arguments based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See* Dkt. 18 at 8-9.)

REPORT AND RECOMMENDATION
PAGE - 7

**fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 20, 2015**.

DATED this 3rd day of February, 2015.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 8